UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: ACTOS (PIOGLITAZONE) PRODUCTS LIABILITY LITIGATION | * * * * | |
| This Document Applies to: | * * | MDL No. 6:11-md-2299 |
| Jules Balbert et. al., | * * | JUDGE DOHERTY |
| Plaintiffs, | * * | MAGISTRATE JUDGE HANNA |
| v. | * * | |
| | * | Civil Action No. _____ |
| TAKEDA PHARMAEUTICALS AMERICA, INC.; TAKEDA PHARMACEUTICALS USA, INC. f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC.; TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER, INC.; TAKEDA PHARMACEUTICAL COMPANY LIMITED; TAKEDA PHARMACEUTICALS, INTERNATIONAL, INC.; TAKEDA PHARMACEUTICALS LLC; TAKEDA CALIFORNIA, INC. f/k/a/ TAKEDA SAN DIEGO, INC. AND ELI LILLY AND COMPANY, | * * * * * * * * * * * * * * | **BUNDLED COMPLAINT** |
| Defendants. | * | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by and through the undersigned attorneys, hereby bring this cause of action against Defendants Takeda Pharmaceuticals America, Inc. ("Takeda America"), Takeda Pharmaceuticals USA, Inc. f/k/a Takeda Pharmaceuticals North America, Inc. ("Takeda USA"), Takeda Global Research & Development Center, Inc. ("Takeda Global Research"), Takeda Pharmaceutical Company Limited ("Takeda Limited"), Takeda Pharmaceuticals International, Inc. ("Takeda International"), Takeda Pharmaceuticals, LLC, and Takeda California, Inc. f/k/a/ Takeda San Diego, Inc. ("Takeda California") (collectively "Takeda") and Eli Lilly and

Company ("Lilly" or collectively with Takeda as "Defendants") and for their Complaint allege, upon information and belief on the investigation to date of counsel, as follows:

## NATURE OF THE CASE

1.      This is a personal injury action on behalf of the Plaintiffs against the Defendants who were responsible for the prescription drug Actos and/or Actoplus Met, Actoplus Me XR, Duetact (Actos), a diabetes medication used by the injured Plaintiffs, as set forth below, which proximately caused the Plaintiffs to sustain injuries and damages.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to each Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because complete diversity exists between the parties, as set forth below, Plaintiffs are citizens of states that are different from the states where the Defendants are incorporated and have their principal places of business.

3.      This Court has supplemental jurisdiction over the remaining common law and state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue in this district is appropriate pursuant to the First General Order – All Actions entered on January 23, 2012, signed by Rebecca F. Doherty, United States District Judge, allowing Actos (pioglitazone) products liability actions to be filed directly in the Western District of Louisiana.

2

## PLAINTIFF SPECIFIC ALLEGATIONS

5.1     Jules Balbert alleges as follows:

   a.   Plaintiff is a citizen of New York State.

   b.   Plaintiff Jules Balbert ingested Actos between approximately 2007 and 2011.

   c.   Following and as a legal and proximate result of Actos use, Jules Balbert suffered bladder cancer and ureter cancer.

5.2     Hector Bucceny alleges as follows:

   a.   Plaintiff is a citizen of Florida.

   b.   Plaintiff Hector Bucceny ingested Actos between approximately 2007 and 2011.

   c.   Following and as a legal and proximate result of Actos use, Hector Bucceny suffered bladder cancer.

5.3     Joseph Cottle alleges as follows:

   a.   Plaintiff is a citizen of Florida.

   b.   Plaintiff Joseph Cottle ingested Actos between approximately 2003 and 2011.

   c.   Following and as a legal and proximate result of Actos use, Joseph Cottle suffered bladder cancer.

5.4    Robert DeMetz alleges as follows:

    a.   Plaintiff is a citizen of Georgia.

    b.   Plaintiff Robert DeMetz ingested Actos between approximately 2009 and 2011.

    c.   Following and as a legal and proximate result of Actos use, Robert DeMetz suffered bladder cancer.

5.5    Margaret Griffiths alleges as follows:

    a.   Plaintiff is a citizen of Florida.

    b.   Plaintiff Margaret Griffiths ingested Actos between approximately 2006 and 2011.

    c.   Following and as a legal and proximate result of Actos use, Margaret Griffiths suffered bladder cancer and ureter cancer.

5.6    John Holt alleges as follows:

    a.   Plaintiff is a citizen of Florida.

    b.   Plaintiff John Holt ingested Actos between approximately 2005 and 2009.

    c.   Following and as a legal and proximate result of Actos use, John Holt suffered bladder cancer.

5.7    Mary Jackson alleges as follows:

4

    a.   Plaintiff is a citizen of Tennessee.

    b.   Plaintiff Mary Jackson ingested Actos between approximately 2007 and 2010.

    c.   Following and as a legal and proximate result of Actos use, Mary Jackson suffered bladder cancer.

5.8    William Jackson alleges as follows:

    a.   Plaintiff is a citizen of Georgia.

    b.   Plaintiff William Jackson ingested Actos between approximately 2007 and 2011.

    c.   Following and as a legal and proximate result of Actos use, William Jackson suffered bladder cancer necessitating a cystectomy.

5.9    Steven Kent alleges as follows:

    a.   Plaintiff is a citizen of Texas.

    b.   Plaintiff Steven Kent ingested Actos between approximately 2006 and 2011.

    c.   Following and as a legal and proximate result of Actos use, Steven Kent suffered bladder cancer.

5.10    James Lanthripe alleges as follows:

    a.   Plaintiff is a citizen of Oklahoma.

b.   Plaintiff James Lanthripe ingested Actos between approximately 2004 and 2011.

c.   Following and as a legal and proximate result of Actos use, James Lanthripe suffered bladder cancer.

5.11   Florestine Metoyer-Johnson alleges as follows:

a.   Plaintiff is a citizen of Virginia.

b.   Plaintiff Florestine Metoyer-Johnson ingested Actos between approximately 2000 and 2011.

c.   Following and as a legal and proximate result of Actos use, Florestine Metoyer-Johnson suffered bladder cancer necessitating a nephroureterectomy.

5.12   Eric Rivera alleges as follows:

a.   Plaintiff is a citizen of Florida.

b.   Plaintiff Eric Rivera ingested Actos between approximately 2005 and 2011.

c.   Following and as a legal and proximate result of Actos use, Eric Rivera suffered bladder cancer.

5.13   Shirley Robinson alleges as follows:

a.   Plaintiff is a citizen of Maryland.

b.   Plaintiff Shirley Robinson ingested Actos between approximately 2006 and 2007.

6

    c.  Following and as a legal and proximate result of Actos use, Shirley Robinson suffered bladder cancer.

5.14    Allan Veinotte alleges as follows:

    a.  Plaintiff is a citizen of Florida.

    b.  Plaintiff Allan Veinotte ingested Actos between approximately 2002 and 2008.

    c.  Following and as a direct and proximate result of Actos use, Allan Veinotte suffered bladder cancer.

## **DEFENDANTS**

6.    Takeda America is a Delaware Corporation, which has its principal place of business at One Takeda Parkway, Deerfield, Illinois 60015.

7.    Takeda America is a wholly owned subsidiary of Takeda USA.

8.    Takeda America has transacted and conducted business within the Plaintiffs' states.

9.    Takeda America has derived substantial revenue from goods and products disseminated and used in the Plaintiffs' states.

10.    Takeda America expected or should have expected their acts to have consequences within the Plaintiffs' states, and derived substantial revenue from interstate commerce.

11.     Takeda USA is a Delaware corporation, which has its principal place of business at One Takeda Parkway, Deerfield, Illinois 60015.

12.     Takeda USA is a wholly owned subsidiary of Takeda Limited.

13.     Takeda USA has transacted and conducted business within the Plaintiffs' states.

14.     Takeda USA has derived substantial revenue from goods and products disseminated and used in the Plaintiffs' states.

15.     Takeda USA expected or should have expected its acts to have consequences within the Plaintiffs' states, and derived substantial revenue from interstate commerce.

16.     Takeda Global Research is a Delaware corporation which has its principal place of business at One Takeda Parkway, Deerfield, Illinois 60015.

17.     Takeda Global Research is a wholly-owned subsidiary of Takeda USA.

18.     Takeda Global Research has transacted and conducted business within the Plaintiffs' states.

19.     Takeda Global Research has derived substantial revenue from goods and products used in the Plaintiffs' states.

20.     Takeda Global Research expected or should have expected their acts to have consequences within the Plaintiffs' states, and derived substantial revenue from interstate commerce.

8

21.     Takeda Limited is a foreign corporation with its principal place of business located at 1-1, Doshomachi 4-chrome, Chuo-ku, Osaka, 540-8645, Japan.

22.     Takeda Limited is the parent company of Takeda USA, and Takeda America is a wholly owned subsidiary of Takeda USA.

23.     Takeda Limited has transacted and conducted business within the Plaintiffs' states.

24.     Takeda Limited has derived substantial revenue from goods and products disseminated and used in the Plaintiffs' states.

25.     Takeda Limited expected or should have reasonably expected their acts to have consequences within the Plaintiffs' states, and derived substantial revenue from interstate commerce.

26.     Takeda Pharmaceuticals International, Inc. is a Delaware corporation with its principal place of business located at One Takeda Parkway, Deerfield, Illinois 60015.

27.     Takeda Pharmaceuticals International, Inc. is a wholly owned subsidiary of Takeda USA.

28.     Takeda Pharmaceuticals International, Inc. has transacted and conducted business within the Plaintiffs' states.

29.     Takeda Pharmaceuticals International, Inc. has derived substantial revenue from goods and products disseminated and used in the Plaintiffs' states.

30.     Takeda Pharmaceuticals International, Inc. expected or should have expected their acts to have consequences within the Plaintiffs' states, and derived substantial revenue from interstate commerce.

31.     Takeda Pharmaceuticals, LLC is a Delaware corporation which has its principal place of business at One Takeda Parkway, Deerfield, Illinois 60015.

32.     Takeda Pharmaceuticals, LLC is a wholly owned subsidiary of Takeda USA.

33.     Takeda Pharmaceuticals, LLC has transacted and conducted business within the Plaintiffs' states.

34.     Takeda Pharmaceuticals, LLC has derived substantial revenue from goods and products disseminated and used in the Plaintiffs' states.

35.     Takeda Pharmaceuticals, LLC expected or should have expected their acts to have consequences within the Plaintiffs' states, and derived substantial revenue from interstate commerce.

36.     Takeda California, Inc. is a Delaware corporation which has its principal place of business at 10410 Science Center Drive, San Diego, California 92121.

37.     Takeda California, Inc. is a wholly owned subsidiary of Takeda USA.

38.     Takeda California, Inc. has transacted and conducted business within the Plaintiffs' states.

39.     Takeda California, Inc. has derived substantial revenue from goods and products disseminated and used in the Plaintiffs' states.

40.     Takeda California, Inc. expected or should have expected their acts to have consequences within the Plaintiffs' states, and derived substantial revenue from interstate commerce.

41.     Lilly is an Indiana corporation with its principal place of business located at Lilly Corporate Center, Indianapolis, Indiana 46285.

42.     Lilly has transacted and conducted business within the Plaintiffs' states.

43.     Lilly has derived substantial revenue from goods and products disseminated and used in the Plaintiffs' states.

44.     Lilly expected or should have expected their acts to have consequences within the Plaintiffs' states, and derived substantial revenue from interstate commerce.

## SUMMARY OF THE CASE

45.     As described in the Plaintiff Specific Allegations, Plaintiffs took Actos, manufactured and distributed by Defendants, for treatment of Type 2 diabetes.

46.     As a result of the defective nature of Actos, persons who were prescribed and who subsequently ingested this product, including Plaintiffs, have suffered and may continue to suffer from their injuries.

47.     Defendants concealed and continue to conceal their knowledge of Actos' unreasonably dangerous risks from Plaintiffs, their physicians, other consumers, and the medical community.  Specifically, Defendants failed to adequately inform consumers and the prescribing

medical community about the risk of injuries associated with more than twelve months of Actos ingestion.

48.     As a result of Defendants' actions and inactions, Plaintiffs were injured due to their ingestion of Actos, which caused and will continue to cause Plaintiffs injuries and damages. Plaintiffs accordingly seek damages associated with these injuries.

## FACTUAL ALLEGATIONS

49.     Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted and sold Actos, for the treatment of Type 2 Diabetes Mellitus.

50.     According to the American Diabetes Association, Type 2 diabetes is the most common form of diabetes.  Type 2 diabetes develops when the body does not produce enough insulin or does not use the insulin that it does produce.

51.     Actos was jointly launched in the United States by Takeda USA and Lilly in 1999.

52.     Actos was approved by the Food and Drug Administration ("FDA") in July of 1999 to treat Type 2 diabetes.

53.     Actos is in a class of insulin-sensitizing diabetes agents known as thiazolidinediones ("TZDs").

54.     On April 20, 2006, Takeda Limited announced the conclusion of its collaboration in the United States between Takeda USA and Lilly to promote and market Actos.

12

55.     Takeda Limited described this partnership as "a great success" and "mutually beneficial to both companies."

56.     Actos exerts its antihyperglycemic effect only in the presence of endogenous insulin.  Therefore, Actos is only used to treat Type 2 diabetes.

57.     Actos is also sold in combination with metformin (Actoplus Met, Actoplus Met XR) and in combination with glimepiride (Duetact).

58.     As a result of the defective nature of Actos, persons who were prescribed and ingested Actos for more than twelve months, including Plaintiffs, were at increased risk for developing bladder cancer, have suffered and may continue to suffer from bladder cancer.

59.     As a result of the defective nature of Actos, persons who were prescribed and ingested Actos for more than twelve months, including Plaintiffs, developed bladder cancer and have suffered and may continue to suffer from bladder cancer.

60.     As a result of Defendant's actions and in actions, Plaintiffs were injured due to their ingestion of Actos, which caused and will continue to cause Plaintiffs various injuries and damages.  Plaintiffs accordingly seek damages associated with these injuries.

61.     Prior to applying for and obtaining approval for Actos, Defendants knew or should have known that Actos use in humans was associated with and/or would cause the induction of bladder cancer and Defendants possessed pre-clinical scientific studies including animal evidence, which evidence Defendants knew or should have known was a signal that bladder cancer risk needed to be further tested and studied before placing Actos on the market.

62.     Despite bladder cancer findings in animal model carcinogenicity studies and other pre-clinical evidence, Defendants failed to adequately conduct complete and proper testing of Actos prior to filing its New Drug Application of Actos

63.     It is now known that Defendants also knew of additional bladder cancer evidence from human clinical trials in the early 2000's.

64.     From the date of approval to market Actos, Defendants made, distributed, marketed, and sold Actos without adequate warning to Plaintiffs' prescribing physicians or Plaintiffs themselves that Actos was associated with and/or could cause bladder cancer and presented a risk of bladder cancer in patients who used it and without adequate warning that Defendants had not adequately conducted complete and proper testing and studies of Actos with regard to carcinogenicity.

65.     For over ten (10) years and to date, Defendants concealed and failed to completely disclose their knowledge that Actos was associated with or could cause bladder cancer or their knowledge that they had failed to fully study and test regarding that risk.

66.     Defendants' failure to disclose information that they possessed regarding the failure to adequately study and test Actos for bladder cancer risk further rendered warnings for this medication inadequate.

67.     Upon information and belief, Defendants ignored the association between the use of Actos and pioglitazone hydrochloride and the risk of developing bladder cancer.

68.     In June, 2011, the Caisse nationale de l'assurance maladie, at the request of the French regulatory agency, published a report including findings that there is a statistically

14

significant association between exposure to pioglitazone (Actos) and bladder cancer and that the risk increased with exposure longer than one year.

69.     In June, 2011, the European Medicine Agency suspended the use of Actos in light of the French Marketing Authorization Committee and the French National Pharmacovigilance Committee's findings regarding the increased risk of bladder cancer.

70.     In June, 2011, Germany's Federal Institute for Drugs and Medical Devices suspended the use of Actos.

71.     On June 15, 2011, the FDA informed the public that the use of the diabetes medication for more than one year may be associated with an increased risk of bladder cancer. The Actos label was then changed to reflect this information in the Warnings and Precautions section as well as the patient Medication Guide to include information regarding the risk of bladder cancer.

72.     The FDA further recommended on June 15, 2011 that healthcare physicians discontinue pioglitazone use in patients with active bladder cancer.

73.     On June 17, 2011, a Health Canada Press Release indicated that in light of studies suggesting an increased risk of bladder cancer with the diabetes drug pioglitazone, as well as actions taken by other regulatory agencies, Health Canada informed healthcare professionals and Canadians that it is undertaking a review of the drug's status.

74.     Actos is one of Defendants' top-selling drugs.  Upon information and belief, in the last year, the medication had global sales of $4.8 billion and accounted for approximately 27% of Takeda's revenue.

75.     In 2008, with the knowledge of the risk associated with developing bladder cancer while using Actos long-term, Takeda Limited achieved its marketing goal by making Actos the tenth best-selling medication in the United States all while placing American citizens at risk of developing bladder cancer.

76.     Consumers, including Plaintiffs, have several alternative safer products available to treat their conditions and have not been adequately warned about the significant risks and lack of benefits associated with long-term Actos therapy.

77.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and their physicians the true and significant risks associated with long-term Actos use.

78.     As a result of Defendants' actions, Plaintiffs and their physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendants' conduct.

79.     Plaintiffs were prescribed Actos upon direction of their physician for long-term maintenance of Type 2 diabetes.  Plaintiffs were subsequently diagnosed with bladder cancer and have had surgery to remove tumors from their bladder due to bladder cancer.

80.     As a direct result of being prescribed Actos, Plaintiffs have been permanently and severely injured, having suffered serious consequences from long-term Actos use.

81.     Plaintiffs require and will in the future require ongoing medical care and treatment.

82.     Plaintiffs, as a direct and proximate result of long-term Actos use, suffered severe mental and physical pain and suffering and have and will sustain permanent injuries and emotional distress, along with economic loss due to medical expenses, and living-related expenses due to their new lifestyle.

83.     Plaintiffs would not have used Actos had Defendants properly disclosed the risks associated with its long-term use.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

84.     The running of any statute of limitation has been tolled by reason of the Defendants' conduct.   The Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' prescribing physicians the true risks associated with Actos and pioglitazone hydrochloride.

85.     As a result of the Defendants' actions, Plaintiffs and Plaintiffs' prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

86.     Furthermore, the Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of Actos and pioglitazone hydrochloride.   The Defendants were under a duty to disclose the true character, quality and nature of Actos because this was non-public information which the Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to the Plaintiffs, their medical providers and/or to their health facilities.

17

87.     Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks.  Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on Defendants' representations.

## FIRST CAUSE OF ACTION
## (NEGLIGENCE)

88.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

89.     Defendants had a duty to Plaintiffs to exercise reasonable care in designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Actos and pioglitazone hydrochloride into the stream of commerce, including a duty to assure that Actos and pioglitazone hydrochloride would not cause users to suffer unreasonable, dangerous side effects such as cancer.

90.     Defendants failed to exercise ordinary care and/or were reckless in designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality controls, and/or distribution of Actos into interstate commerce in that Defendants knew or should have known that using Actos caused a risk of unreasonable, dangerous side effects, including bladder cancer.

91.     Despite the fact that Defendants knew or should have known that Actos was associated with and/or caused bladder cancer, Defendants continued to market, manufacture, distribute and/or sell Actos to consumers, including Plaintiffs.

18

92.     Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care.

93.     Defendants' negligence and/or recklessness was the proximate cause of Plaintiffs' injuries, harm and economic loss they suffered and/or will continue to suffer.

94.     As a result of Defendants' negligence and/or reckless, Plaintiffs suffered and will continue to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

95.     As a result of the foregoing acts and omissions, Plaintiffs requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed, believe, and further allege that they will in the future be required to obtain further medical and/or hospital care, attention, and services.

96.     By reasons of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## SECOND CAUSE OF ACTION
## (STRICT PRODUCTS LIABILITY – FAILURE TO WARN)

97.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

98.     Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced Actos into the stream of commerce, and in the course of the same, directly advertised or marketed Actos and pioglitazone hydrochloride to consumers or persons responsible for consumers, and therefore, had a duty to Plaintiffs directly and to their physicians to warn of risks associated with the use of the product.

99.     Defendants had a duty to warn of adverse drug reactions, which they know or have reason to know can be caused by the use of Actos and pioglitazone hydrochloride and/or are associated with the use of Actos and pioglitazone hydrochloride.

100.    The Actos and pioglitazone hydrochloride manufactured and/or supplied by the Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the Defendants knew or should have known of the risks of bladder cancer from Actos use, they failed to provide adequate warning to consumers of the product, including Plaintiffs and their physicians, and continued to aggressively promote Actos.

101.    Due to the inadequate warning regarding bladder cancer, Actos was in a defective condition and unreasonably dangerous at the time that it left the control of the Defendants.

102.    Defendants failed to adequately warn Plaintiffs and their prescribing physicians of human and animal results in studies pertaining to bladder cancer and Actos.

103.    Had Plaintiffs been adequately warned of the potential life-threatening side effects of Actos, they would not have purchased or taken Actos and could have chosen to request other treatments or prescription medications.

104.    Upon information and belief, had Plaintiffs' prescribing physicians been adequately warned of the potential life-threatening side effects of Actos, their prescribing physicians would have discussed the risks of bladder cancer and Actos with Plaintiffs and/or would not have prescribed it.

105.    As a foreseeable and proximate result of the aforementioned wrongful acts and omissions of Defendants, Plaintiffs suffered and will continue to suffer from the aforementioned injuries and damages.

106.    By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## THIRD CAUSE OF ACTION
## (STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN)

107.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

108.    Actos was expected to, and did, reach the intended consumers, handlers, and persons coming into contact with the product without substantial change in the condition in which it was produced, manufactured, sold, distributed, labeled, and marketed by Defendants.

21

109.    At all times relevant, Actos was manufactured, designed, and labeled in an unsafe, defective, and unreasonably dangerous condition, which was dangerous for use by the public, and, in particular, by Plaintiffs.

110.    Actos was sold in a defective condition, as it was unreasonably dangerous due to the risk of bladder cancer posed by the drug.  Such foreseeable risks exceeded the alleged benefits associated with the design and formulation of Actos.

111.    Actos and pioglitazone hydrochloride as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendants was defective in design and formulation in that when it left the hands of the Defendants' manufacturers and/or suppliers it was unreasonably dangerous and was also more dangerous to an extent beyond that which the ordinary consumer would expect.

112.    At all times herein mentioned, Actos and pioglitazone hydrochloride was in a defective condition and was unsafe, and Defendants knew and had reason to know that the product was defective and inherently unsafe, especially when Actos was used in a form and manner instructed and provided by the Defendants.

113.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, common, intended use.

114.    At the time of Plaintiffs' use of Actos, it was being used for its intended purpose, and in a manner normally intended, namely for the treatment of Type 2 Diabetes Mellitus.

115.    Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed a defective product that caused an

unreasonable risk to the health of consumers, and to Plaintiffs in particular, and Defendants are therefore strictly liable for the injuries and damages sustained by Plaintiffs.

116.    At the time Defendants' product left their control, there was a practical, technical feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Actos.  This was demonstrated by the existence of other Type 2 Diabetes Mellitus medications which had a more established safety profile and a considerably lower risk profile.

117.    Plaintiffs could not, in the reasonable exercise of care, have discovered Actos' defects and perceived its danger.

118.    The defects in Defendants' product were substantial and contributing factors in causing Plaintiffs' injuries.

119.    As a direct and proximate result of the aforementioned wrongful acts and omissions of Defendants, Plaintiffs suffered and continue to suffer from the aforementioned injuries and damages.

120.    Due to the unreasonably dangerous condition of Actos, Defendants are strictly liable to Plaintiffs.

121.    By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## FOURTH CAUSE OF ACTION
## (BREACH OF EXPRESS WARRANTY)

122.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

123.    Defendants expressly warranted that Actos was safe for its intended use and as otherwise described in this complaint.  Actos did not conform to these express representations, including, but not limited to, the representation that it was well accepted in patient and animal studies, the representation that it was safe, and the representation that it did not have high and/or unacceptable levels of life-threatening side effects like bladder cancer, that it would improve health, maintain health, and potentially prolong health.

124.    The express warranties represented by the Defendants were a part of the basis for Plaintiffs' use of Actos and they relied on these warranties in deciding to use Actos.

125.    At the time of the making of the express warranties, the Defendants had knowledge of the purpose for which the Actos and pioglitazone hydrochloride was to be used, and warrantied same to be in all respects safe, effective and proper for such purpose.

126.    Actos does not conform to these express representations because Actos is not safe or effective and may produce serious side effects such as bladder cancer, degrading Plaintiffs' health and shrinking their life expectancy.

127.    As a result of the foregoing acts and omissions Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed and believe and further allege that they will in the future be required to obtain further medical and/or hospital care, attention, and services.

24

128.    By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## FIFTH CAUSE OF ACTION
## (BREACH OF IMPLIED WARRANTY
## FOR A PARTICULAR PURPOSE)

129.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

130.    At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to treat Type 2 Diabetes Mellitus.

131.    The Defendants impliedly represented and warranted to the users of Actos that Actos was safe and fit for the particular purpose for which said product was to be used, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

132.    These representations and warranties aforementioned were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiffs' health and shortened their life expectancy.

133.    Plaintiffs relied on the implied warranty of fitness for a particular purpose.

134.    Plaintiffs reasonably relied on the skill and judgment of Defendants as to whether Actos was safe and fit for its intended use.

135.    Actos and pioglitazone hydrochloride were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the conditions in which they were sold.

136.    Defendants breach the aforesaid implied warranty, as their drug Actos was not safe and fit for its intended purposes and uses.

137.    As a result of the foregoing acts and omissions Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed and believe and further allege that they will in the future be required to obtain further medical and/or hospital care, attention, and services.

138.    By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

**SIXTH CAUSE OF ACTION**
**(BREACH OF IMPLIED WARRANTY**
**OF MERCHANTABILITY)**

139.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

140.    Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to treat Type 2 Diabetes Mellitus.

141.    Defendants marketed, sold and distributed Actos and knew and promoted the use for which Actos was being used by Plaintiffs and impliedly warranted to them that Actos was of merchantable quality and fit for the ordinary purpose for which it was intended, namely treating diabetes, improving health, maintaining health, and prolonging life.

142.    These representations and warranties aforementioned were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiffs' health and shortened their life expectancy.

143.    Plaintiffs reasonably relied on the skill, expertise and judgment of the Defendants and its representations as to the fact that Actos was of merchantable quality.

144.    The Actos and pioglitazone hydrochloride manufactured and supplied by the Defendants was not of merchantable quality, as warranted by the Defendants in that the drug had dangerous and life-threatening side effects and was thus not fit for the ordinary purpose which it was intended.

145.    As a direct and proximate result of the foregoing, Plaintiffs suffered bodily injury, pain and suffering and economic loss.

146.    As a result of the foregoing acts and omissions Plaintiffs require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiffs are informed and believe and further allege that they will in the future be required to obtain further medical and/or hospital care, attention, and services.

147.    By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000 and

27

punitive damage, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## SEVENTH CAUSE OF ACTION
## (NEGLIGENT MISREPRESENTATION)

148.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

149.    Defendants owed a duty in all of their undertakings, including the dissemination of information concerning Actos, to exercise reasonable care to ensure that they did not in those undertakings create unreasonable risks of personal injury to others.

150.    Defendants disseminated to physicians, through published labels and otherwise, information concerning the properties and effects of Actos with the intention that physicians would rely upon that information in their decisions concerning the prescription of drug therapy for their patients.

151.    Defendants, as prescription drug manufacturers and/or distributors, knew or reasonably should have realized that physicians, in weighing the potential benefits and potential risks of using Actos, would rely upon information disseminated to them by the manufacturer of the name brand product, and that many patients, in accordance with those prescriptions, would be likely to ingest Actos as properly dispensed by their pharmacies.

152.    Defendants, as prescription drug manufacturers and/or distributors, knew or reasonably should have realized that patients receiving prescriptions for Actos, written by physicians in reliance upon information disseminated by Defendants as the manufacturer/distributor of Actos, would be placed in peril of grievous personal injury if the

information disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

153.    Defendants failed to exercise reasonable care to ensure that the information they disseminated to physicians concerning the properties and effects of Actos was inaccurate and not misleading, and, as a result, disseminated information to physicians that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to patients such as Plaintiffs.

154.    As a direct, proximate and foreseeable result of Defendants' negligence, Plaintiffs suffered grievous bodily injury and consequent economic and other loss, as described above, when their physicians, in reasonable reliance upon the negligently inaccurate, misleading, and otherwise false information disseminated by Defendants, and believing the information to be true, prescribed for them the use of Actos for a prolonged and unwarranted period of time, exceeding twelve (12) months.  Plaintiffs ingested Actos as prescribed and instructed by their physicians, leading to their injuries.

## PUNITIVE DAMAGES

155.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

156.    Defendants acted, as described above, intentionally, fraudulently, maliciously, and/or recklessly in designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, selling and/or distributing Actos.   Defendants risked the lives of consumers and users of their products, including the Plaintiffs, with knowledge of the safety and

efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, as follows:

   a.  Awarding monetary damages to Plaintiffs for all of Plaintiffs' injuries in an amount to be determined at trial, as alleged herein;

   b.  Awarding pre-judgment and post-judgment interest to Plaintiffs;

   c.  Awarding the costs and the expenses of this litigation to Plaintiffs;

   d.  Awarding reasonable attorney's fees and costs to Plaintiffs as provided by law; and

   e.  Granting all such other relief as the Court deems necessary, just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Respectfully submitted,

 /s/ Michael Goetz
Michael Goetz
Florida Bar No. 0963984
**Morgan & Morgan, P.A.**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: (813) 223-5505
Fax: (813) 222-4730
MGoetz@forthepeople.com

*Trial/lead Counsel for Plaintiffs*